UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DYNAMIC DESIGNS DISTRIBUTION, INC.,

    Plaintiff,

v.                            Case No. 8:13-cv-707-T-33TBM

NALIN MANUFACTURING, LLC and ANDREW NALIN,

    Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to Plaintiff Dynamic Designs Distribution, Inc.'s Motion to Enforce the Terms of the Settlement Agreement and Stay Discovery Pending Ruling on this Motion (Doc. # 25), which was filed on October 2, 2013. Defendants Nalin Manufacturing, LLC and Andrew Nalin filed a Response in Opposition to the Motion (Doc. # 26) on October 16, 2013. Dynamic Designs filed a Reply with leave of Court (Doc. # 29) on October 25, 2013. For the reasons that follow, the Court denies the Motion.

**I.   Background**

Plaintiff Dynamic Designs is a "seller of various car-related products on eBay, including, but not limited to speaker adapters, radio dash adaptors, radio wire harnesses, speaker harnesses, and ipod integration products." (Doc. # 1 at ¶ 9). Defendants Nalin Manufacturing and Mr. Nalin claim

trademark rights in a certain Jeep Wrangler car speaker adapter. (Id. at ¶ 14). Mr. Nalin contacted eBay and advised eBay that Dynamic Designs was selling the disputed car speaker adaptors in violation of federal law. (Id. at ¶ 15). Thereafter, eBay "notifi[ed] [Dynamic Designs] that its listing was removed for an alleged trademark/trade dress violation." (Id. at ¶ 16). Dynamic Designs alleges that Mr. Nalin's conduct has caused a business disruption for Dynamic Designs because "it is currently unable to sell the car speaker adapters on eBay and is losing sales every day that it is unable to post items for sale on eBay." (Id. at ¶ 58).

On March 20, 2013, Dynamic Designs filed a Complaint against Nalin Manufacturing and Mr. Nalin seeking a declaratory judgment of noninfringement and invalidity of Defendants' alleged trade dress (count 1); claiming tortious interference with Dynamic Designs' business relationship with eBay (count 2); and alleging violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (count 3).

On June 6, 2013, the Court issued its Case Management and Scheduling Order. (Doc. # 21). Among other deadlines, the Court established the discovery deadline as November 15, 2013, the dispositive motions deadline as January 24, 2014, and set the case for a jury trial during the Court's July 2014, trial

term. The case is set to mediate before Peter Grilli, Esq. on November 14, 2013. (Doc. # 24).

The parties began settlement negotiations during the case management conference. Thereafter, the attorneys for both sides drafted numerous email communications in an attempt to resolve the case. On June 4, 2013, counsel for Dynamic Designs, Amber Davis, Esq., proposed a settlement for "a consent judgment that Nalin Mfg. does not have any trade dress on the car speaker adapter and Dynamic Designs is not infringing; that Defendants' actions constitute unfair and deceptive trade practices under Florida law; and that Defendants committed tortious interference." (Doc. # 25-1 at 2). Dynamic Designs' proposal also contemplated a "settlement agreement" in which "Defendants admit that there is no trade dress, copyright, or design patent on the car speaker adapter and an agreement . . . to no longer file complaints on eBay, Amazon etc. re: the sale of the car speaker adapter." (Id.). Furthermore, Dynamic Designs demanded payment of $15,000 in attorney's fees. (Id. at 3).

Wayne Harper, Esq., counsel for Mr. Nalin and Nalin Manufacturing, responded on June 21, 2013, by indicating that "Mr. Nalin has rejected [Dynamic Designs'] offer." (Doc. # 25-2 at 2). Mr. Harper proposed a counteroffer as follows:

(1) The parties shall bear their own legal costs.

> (2) DDD shall dismiss its suit with prejudice.
> (3) Mr. Nalin will agree to grant DDD a non-exclusive, perpetual, royalty-free license to his designs to DDD.
> (4) Mr. Nalin will agree to take any actions required on his part to enable DDD to sell its products freely on eBay.
> (5) Mr. Nalin will agree to refrain from interfering with DDD's actions marketing its products on eBay, provided they do not specifically reference Mr. Nalin, Nalin Mfg. or its products by name. Such agreement could contain a liquidated damages clause as DDD proposes.
>
> Mr. Nalin invites DDD to add additional terms as it sees fit where not in derogation of the substance of the above terms.

(Id. at 3).[1]

Terry Sanks, Esq., co-counsel for Dynamic Designs, responded on June 24, 2013, by stating: "My client finds Mr. Nalin's counteroffer unacceptable." (Doc. # 25-3 at 2). In the same communication, Dynamic Designs proposed a settlement in which it would dismiss its lawsuit with prejudice if Mr. Nalin and Nalin Manufacturing would (1) agree not to interfere with Dynamic Designs' business activities on eBay; (2) grant Dynamic Designs a non-exclusive, perpetual, royalty-free license for his designs to Dynamic Designs; and (3) pay $15,000 in attorney's fees. (Id. at 3).

On June 28, 2013, Mr. Harper responded that "Mr. Nalin rejects and continues to reject any settlement offer that

---

[1] In the parties' email communications, they refer to Dynamic Designs as "DDD."

requires him to pay any portion of DDD's attorneys' fees on any terms. . . . Mr. Nalin renews his settlement offer I previously sent you." (Doc. # 25-4 at 2).

On September 11, 2013, Ms. Davis responded on behalf of Dynamic Designs that Mr. Nalin and Nalin Manufacturing's "terms are acceptable" and that "I look forward to reviewing a draft of the agreement." (Doc. # 25-6 at 2). On September 13, 2013, Mr. Harper sent Dynamic Designs a proposed settlement agreement. (Doc. # 25-7). The proposed agreement contained the following terms, among others: (1) dismissal of the complaint with prejudice; (2) the parties to bear their own costs and attorney's fees; (3) a non-exclusive, perpetual, royalty-free license to Dynamic Designs for the Nalin Adapter; (4) an agreement that Mr. Nalin would not interfere with Dynamic Designs' sale of adapters on eBay; (5) liquidated damages in the event of a breach; (6) a non-disparagement agreement; and (7) various releases. (Id.).

On September 16, 2013, Ms. Davis indicated, on behalf of Dynamic Designs, that she had minor changes to make to the agreement, and attached mostly formatting suggestions. (Doc. # 25-8).

On September 19, 2013, Mr. Harper contacted Ms. Davis and stated: "After a few days with an actual settlement before him, [Mr. Nalin] is now concerned that his product and the DDD

will not be sufficiently distinguished in the marketplace. The implications of a perpetual license to a design are hitting home." (Doc. # 25-9).  On September 20, 2013, Ms. Davis remarked: "We have an enforceable settlement agreement against your client and it is too late for him to balk at a term that not only **he proposed**, but he **agreed to**." (Doc. # 25-10 at 2).  Mr. Harper responded: "Mr. Nalin is not willing to enter into a settlement agreement that allows DDD to use his design free of royalties.  He is willing to license the design for royalties." (Doc. # 25-12 at 2).

On October 2, 2013, Dynamic Designs filed its Motion to Enforce Settlement Agreement. (Doc. # 25).  Mr. Nalin and Nalin Manufacturing have responded (Doc. # 26) and in connection therewith, have provided the Court with the affidavit of Mr. Harper (Doc. # 26-1) and the affidavit of Mr. Nalin. (Doc. # 26-2). Mr. Harper indicates: "Between about June of 2013 to October of 2013 I corresponded with Plaintiff's counsel by email in an effort to work out a settlement in this matter. I regarded all such communications as preliminary negotiations, not a binding agreement.  I was not authorized by Mr. Nalin to conclude a settlement without his signature." (Doc. # 26-1).

Mr. Nalin's affidavit states in pertinent part:

> During the majority of the period the negotiations were occurring, I was on active duty and my ability to communicate with Wayne Harper was very limited.
> I was aware that among the various terms proposed to the Plaintiff included a license of my design to Plaintiff.
> Due to a misunderstanding between Wayne Harper and myself, I did not understand that what was proposed to the Plaintiff was a perpetual royalty-free license that the Plaintiff would be able to continue to sell adapters reflecting my design in an unfettered and predatory manner without compensating me for use of the design.
> I did not realize this until I reviewed a draft settlement agreement in detail, whereupon I rejected the proposed terms.
> Under no circumstance will I, nor have I ever been willing to grant Plaintiff a royalty free license to use Nalin Manufacturing LLC's intellectual property that Plaintiff purchased to intentionally copy, and to this day continues to fraudulently sell.
> I feel that Plaintiff's counsel, recognizing the Plaintiff's guilt, is trying to use a misunderstanding between Wayne Harper and myself from halfway across the country as a binding agreement without signatures or exhibits. The first time I saw the settlement proposal in writing I immediately contacted Wayne to inform him of the errors.
> No email conversations between my council and Plaintiff's council should be considered some sort of binding settlement agreement without my consent or signature. I regarded all of [] Wayne Harper's communications with Plaintiff's counsel as preliminary negotiations, not a binding agreement.
> I did not authorize Wayne Harper to conclude a settlement without my signature.
> I did not sign the proposed settlement agreement.

(Doc. # 26-2 at ¶¶ 19-27).

## II. Legal Standard

Federal Courts possess the "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." Ford v. Citizens & S. Nat'l Bank, 928 F. 2d 1118, 1121 (11th Cir. 1991)(quoting Cia Anon Venezolana de Navegacion v. Harris, 374 F.2d 33, 36 (5th Cir. 1967)). The enforcement of a settlement agreement essentially amounts to the enforcement of a contract, and is therefore governed by Florida law. Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987); Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985)("Settlements, of course, are governed by the rules for interpretation of contracts.").

Generally, settlement agreements are highly favored and will be upheld by the courts whenever possible. Spiegel v. H. Allen Holmes, Inc., 834 So. 2d 295, 297 (Fla. 4th DCA 2002). "Courts use an objective test to determine whether the parties have made an enforceable [settlement] contract." Hanson v. Maxfield, 23 So. 3d 736, 739 (Fla. 1st DCA 2009). "A contract is formed when the parties express their mutual assent to the essential terms." Enriquez v. Williams, No. 2:05-cv-238-FtM-36DNF, 2010 U.S. Dist. LEXIS 94290, at *6 (M.D. Fla. Aug. 20, 2010). "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and

is evaluated on a case-by-case basis." Id.  As stated in Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Financial Corp., 302 So. 2d 404, 408 (Fla. 1974), "[e]ven [if] all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them."

Under Florida law, "a party seeking judgment on compromise and settlement has the burden of establishing assent by the opposing party.  Unauthorized assent manifested by a party's attorney is insufficient." Mass. Cas. Ins. Co. v. Forman, 469 F.2d 259, 261 (5th Cir. 1972)(quoting Goff v. Indian Lake Estates, Inc., 178 So. 2d 910, 912 (Fla. 2d DCA 1965)). Furthermore, "an attorney's belief that he or she has the authority to settle does not alone establish such authority." Sharick v. SE Univ. Health Servs., Inc., 891 So. 2d 562, 565 (Fla. 3d DCA 2004).

As explained in Spiegel, "A client's express authority given to his attorney to settle a cause of action must be clear and unequivocal." 834 So. 2d at 297. "Authority to compromise a disputed claim cannot be assumed from employment of counsel to handle the litigation: special or express authority to compromise or settle must be clear and unequivocal." Mass Cas. Ins. Co., 469 F.2d at 261; see also Sharick, 891 So. 2d at 565 ("Employment of an attorney to

represent a client does not confer on the attorney the implied or apparent authority to compromise or settle the client's claims.").

### III. Analysis

The draft settlement agreement was not signed by either party in this case. Mr. Nalin indicates that, during the settlement negotiations, he was serving on active military duty and was not able to successfully communicate with his counsel at all necessary times. He explains that "[d]ue to a miscommunication between Wayne Harper and myself, I did not understand that what was proposed to the Plaintiff was a perpetual royalty-free license that the Plaintiff would be able to continue to sell adapters reflecting my design in an unfettered and predatory manner without compensating me for use of the design." (Doc. # 26-2 at ¶ 21). In addition, he underscores that he did not give his attorney the authority to conclude the settlement without his signature. (Id. at ¶ 26). Mr. Harper has similarly filed an affidavit indicating that he did not have the authority to enter into a binding settlement agreement without obtaining Mr. Nalin's signature. (Doc. # 26-1 at ¶ 5).

As stated in Jarvis v. City Electric Supply Co., No. 6:11-cv-1590-Orl-22DAB, 2012 U.S. Dist. LEXIS 37195, at *7

-10-

(M.D. Fla. Mar. 5, 2012), "Where, as here, the parties negotiated through counsel, Florida law provides that the party seeking to enforce a settlement agreement must demonstrate that the other party's counsel had 'clear and unequivocal authority to enter into the settlement agreement.'" (citing Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1485 (11th Cir. 1994)).

Dynamic Designs bears the burden of demonstrating that an enforceable agreement has been reached.  It has not carried its burden because it has not and cannot demonstrate that counsel for Mr. Nalin and Nalin Manufacturing had clear and unequivocal authority to effectuate a binding settlement without obtaining Mr. Nalin's signature.  To the contrary, multiple affidavits on the record state that such authority was absent.

Furthermore, the Court determines that a meeting of the minds was not reached due to a misunderstanding about the perpetual, royalty-free license proposed in the draft settlement agreement. The Court also finds that the email communications exchanged by counsel were non-binding negotiations and did not give rise to a binding agreement. The Court accordingly denies Dynamic Designs' Motion to Enforce Settlement Agreement.

Accordingly, it is now

-11-

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Dynamic Designs Distribution, Inc.'s Motion to Enforce the Terms of the Settlement Agreement and Stay Discovery Pending Ruling on this Motion (Doc. # 25) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 29th day of October, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:   All Counsel of Record