UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DYNAMIC DESIGNS DISTRIBUTION
INC.,

      Plaintiff,

v.                      Case No. 8:13-cv-707-T-33TBM

NALIN MANUFACTURING, LLC and
ANDREW NALIN,

      Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff Dynamic Designs Distribution, Inc.'s Motion for Summary Judgment (Doc. # 35) filed on January 24, 2014. Defendants Nalin Manufacturing, LLC and Andrew Nalin (collectively "Nalin") filed a Response in Opposition to the Motion for Summary Judgment (Doc. # 36) on February 7, 2014, to which Dynamic Designs filed a Reply (Doc. # 37) on February 17, 2014. For the reasons that follow, the Court grants the Motion for Summary Judgment in part.

I.   **Background**

    A.   **Nalin's Speaker Adapter and Attempts to Protect it**

Andrew Nalin is the President of Nalin Manufacturing. (Nalin Decl. Doc. # 36-1 at ¶ 2). On August 2, 2010, Mr. Nalin designed an aftermarket speaker adapter for Jeep Wrangler automobiles. (Id. at ¶ 3). The Nalin speaker adapter

is made of steel, has rounded corners, features holes for mounting, and includes hardware for installation. (Id. at ¶¶ 4, 9, 12). Mr. Nalin filed a design patent application for the speaker adapter on September 4, 2011. (Id. at ¶ 34). The application was incomplete, and Mr. Nalin received a Notice of Incomplete Application, issued by the United States Patent and Trademark Office ("USPTO") in late September of 2011. (Id. at ¶ 35). Mr. Nalin "did not respond to the Notice and the patent application was never examined." (Id.). The USPTO issued a Notice of Abandonment on December 23, 2011. (Id. at ¶ 36; Doc. # 35-5 at 2).

Mr. Nalin filed a copyright application relating to the speaker adapter on February 17, 2012. (Nalin Dec. Doc. # 36-1 at ¶ 41). On July 24, 2012, the United States Copyright Office rejected the copyright application, noting, inter alia: "[b]ecause all of the elements of the work you deposited are either related to the utilitarian aspects or function, or are subsumed within the overall shape, contour, or configuration of the article, there is no physically or conceptually 'separable' authorship as such. Consequently, we cannot register this claim." (Doc. # 35-6 at 4).

2

### B.   <u>Communications with Dynamic Designs</u>

In May of 2011, Dynamic Designs began selling its Jeep Wrangler aftermarket speaker adapter on eBay. (Horning Aff. Doc. # 35-1 at ¶ 4).  Dynamic Designs utilized the seller names "Autoware 302" and "Florida Handmade Creations." (<u>Id.</u>). On August 19, 2011, Mr. Nalin contacted Dynamic Designs via email correspondence through eBay, in which Mr. Nalin alleged that Dynamic Designs "stole [his] idea" and was "selling someone else's product." (Horning Aff. Doc. # 35-1 at ¶ 5). On November 11, 2011, Mr. Nalin filed a "VeRO complaint with eBay asserting that the Dynamic Designs speaker adapter infringed Nalin's trademark rights." (Nalin Decl. Doc. # 36-1 at ¶ 46; Doc. # 36-8 at 2-3). In that document, Mr. Nalin categorized Dynamic Designs' speaker adapters as "a counterfeit product which infringes the trademark owner's rights" and submitted that:

> under penalty of perjury that I am the owner, or an agent authorized to act on behalf of the owner, of certain intellectual property rights ('IP Owner'); I have a good faith belief that the listings identified (by item number) in the addendum attached hereto offer items or contain materials that are not authorized by the IP Owner, its agent, or the law; and [t]he information in this notice is accurate.  Please act expeditiously to remove the listings identified in the addendum.

(Doc. # 36-8 at 2-4).

3

On February 29, 2012, eBay responded to Mr. Nalin's complaint by removing Dynamic Designs eBay listings under the Autoware302 account. (Doc. # 1-4; Doc. # 35-4 at 3). However, Dynamic Designs "continued selling the subject car speaker adapters under the account name 'Florida Handmade Creations.'" (Horning Aff. Doc. # 35-1 at ¶ 16). Then, on February 18, 2013, Dynamic Designs "received a cease and desist letter from Mr. Nalin stating that Mr. Nalin holds the 'copyright, trademark, patent pending along with trade dress protection previously recognized and enforced by eBay against user Autoware302.'" (Id.; Doc. # 1-9). In addition, Nalin Manufacturing posted the cease and desist letter, which follows, on its Facebook page:

> Dynamic Designs Distribution, Inc.,
> It has come to my attention that you have made unauthorized uses of my copyrighted 5.25" TJ Speaker Adapter design in the preparation of a work derived therefrom. I have reserved all rights in the Work, which was first published in 2010 on http://www.NalinMFG.com, and I hold the copyright, trademark, patent pending, along with trade dress protection previously recognized and enforced by eBay against user Autoware302. . . . You neither asked for nor received permission to use my Work as the basis for your replicas, nor to make or distribute copies of it. These actions constitute copyright infringement in violation of United States Copyright laws. Under 17 U.S.C. § 504, the consequences of copyright infringement include statutory damages of between $750 and $30,000 per work, at the discretion of the court, and damages up to $150,000 per work for willful infringement.

4

> If you continue to engage in copyright infringement
> after receiving this letter, your actions will be
> evidence of "willful infringement." I demand that
> you immediately cease the use and distribution of
> all infringing works derived from my Work, and all
> copies of it, and that you deliver to me all
> unused, undistributed copies of it, or destroy such
> copies immediately.

(Doc. # 1-9; Doc. # 35-12).

In response to the cease and desist letter, "although Plaintiff believed that it was entirely unfounded," Dynamic Designs "took down any and all of the allegedly infringing car speaker adapters being sold under the username, 'Florida Handmade Creations,' on eBay" and hired counsel. (Doc. # 1 at ¶ 28; Horning Decl. Doc. # 35-1 at ¶ 15).

C. **Complaint**

On March 20, 2013, Dynamic Designs filed an action for declaratory judgment of non-infringement and invalidity of Nalin's trade dress (count one), for damages based on Nalin's tortious interference with Dynamic Designs' business relationship with eBay (count two) and for damages based on deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act, § 501.201 (count three). (Doc. # 1). Nalin filed an Answer on May 10, 2013. (Doc. # 17). Dynamic Designs seeks summary judgment as to each of its complaint counts.

## II.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

6

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

III. **Analysis**

    A.   **Lanham Act Trade Dress**

    Section 43(a) of the Lanham Act states that:

> (1) Any person who, on or in connection with any
> goods or services, . . . uses in commerce any word,
> term, name, symbol, or device, . . . or any false
> designation of origin, . . . which (A) is likely to
> cause confusion, or to cause mistake, or to deceive
> as to the affiliation, . . . of such person with
> another person, . . . shall be liable in a civil
> action by any person who believes that he or she or
> is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

    As explained in AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1535 (11th Cir. 1986), "Section 43(a) creates a federal cause of action for trade dress infringement." Trade dress "refers to the appearance of a product when that appearance is used to identify the producer." Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1202 (11th Cir. 2004). "Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." Ambrit, 812 F.2d at 1535 (internal quotation marks omitted). "While the classic trade dress infringement action involved the packaging or labeling of goods, the design of the product itself--its configuration--may constitute

8

protectable trade dress under § 43(a) of the Lanham Act." <u>Epic Metals Corp. v. Souliere</u>, 99 F.3d 1034, 1038 (11th Cir. 1996).

To succeed on a claim of trade dress infringement, the claimant must demonstrate: "(1) the product design of the two products is confusingly similar; (2) the features of the product design are primarily non-functional; and (3) the product design is inherently distinctive or has acquired secondary meaning." <u>Dippin' Dots, Inc.</u>, 369 F.3d at 1202. "As all three elements are necessary for a finding of trade dress infringement, any one could be characterized as threshold." <u>Id.</u> (citing <u>Epic Metals Corp.</u>, 99 F.3d at 1039).

### 1. **Functionality**

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." <u>Qualitex Co. v. Jacobson Prods. Co.</u>, 514 U.S. 159, 164 (1995). "The line between functionality and non-functionality is not brightly drawn in every case." <u>Epic Metals Corp.</u>, 99 F.3d at 1039. However, the <u>Dippin' Dots</u> court articulated two tests for determining whether a feature is functional (and thus not

entitled to trade dress protection) or non-functional (a requirement for trade dress protection).

The first test is "commonly referred to as the traditional test." Dippin' Dots, Inc., 369 F.3d at 1203. Under that test, "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Id.

The second test is "commonly called the competitive necessity test." Id. Under that test, "a functional feature is one the 'exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" (citing TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 32 (2001)). "Where the design is functional under the traditional test, 'there is no need to proceed further to consider if there is a competitive necessity for the feature.'" Dippin' Dots, Inc., 369 F.3d at 1203 (citing TrafFix, 532 U.S. at 33).

In Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC, 845 F. Supp. 2d 1241 (M.D. Fla. 2012), the court was called upon to determine whether steel storage containers were entitled to trade dress protection. In determining that design features of the containers were functional (and thus not entitled to trade dress protection),

10

the court examined the characteristics held out as non-functional (such as being made of steel and including wire mesh and movable racks) and determined that "common, everyday design characteristics [] do not qualify for trade dress protection." Id. at 1257.

The design features of the speaker adapter that Nalin contends are non-functional are (1) the presence of three mounting holes, (2) utilization of rounded corners, and (3) steel construction.  The Court determines that each of these features is primarily functional and not entitled to trade dress protection.

As to Nalin's use of three holes for mounting the speaker adapter, Dynamic Designs posits that "three holes are frequently used in the speaker adapter industry for the same functional purpose for which [Nalin] use[s] them." (Doc. # 37 at 3).  Dynamic Designs has filed advertisements for numerous speaker adapters, all utilizing three holes for mounting. See (Doc. # 37-3 featuring advertisements for adapters for Subaru Forester, Nissan 240sx, BMW 3 Series, and Jeep Wranger).

Dynamic Designs also asserts that "[t]he reason for using three holes in close proximity to one another is a purely

11

functional choice" because "[s]ome speakers may have their mounting tabs in slightly different locations such that the middle of the three holes would fit; whereas other speakers may need to be mounted on the inner-most mounting holes." (Doc. # 35 at 11). Nalin Manufacturing's responses to Dynamic Designs' interrogatories lend support to Dynamic Designs' position.

Specifically, Dynamic Designs requested that Nalin Manufacturing describe "the specific features of Defendant's car speaker adapter which are the basis of the Defendant's legal contention that trade dress protection exists." (Doc. # 35-8 at 6). In response, Nalin Manufacturing did not state that using three holes was a unique non-functional feature. Instead, with respect to the three holes, Nalin Manufacturing indicated: "Due to the popularity, advertisements, industry recognition, warranty, and visible success of the Nalin Manufacturing, LLC brand, many companies have since improved upon their design to better compete **at the functional level (to include holes** and hardware)." (<u>Id.</u>)(emphasis added). Thus, it appears that Nalin Manufacturing has itself characterized its hole pattern as functional.

Dynamic Designs' discussion of Nalin Manufacturing's three hole pattern, which follows, is supported by Nalin Manufacturing's aforementioned discovery responses:

> Manufacturers seeking to sell speaker adapters which enable the use of aftermarket speakers in [original equipment manufacturer] speaker-mounting locations requires that universal speaker mounting holes be included, whether it's three holes or a slot which extends the length of three individual holes. A speaker adapter without such feature would be worthless, and that feature is therefore essential to the use and purpose (i.e. mounting all types of non-jeep speakers in a Jeep) while also affecting the cost or quality (i.e. a speaker adapter without the ability to adapt to multiple brands and types of speakers is of less quality than one that does allow such universal mounting).

(Doc. # 35 at 12). Nalin has not provided any evidence tending to show that inclusion of three holes on the Nalin speaker adapter is a non-functional characteristic entitled to trade dress protection.

The Court further finds that Nalin's use of rounded corners, as opposed to sharp corners, is also a functional characteristic. Nalin Manufacturing's interrogatory answers indicate that "[r]ounding the edges is non-functional and serves no utilitarian purpose. It was done with the purpose of separating Nalin Manufacturing, LLC from any and all competitors so that customers could easily recognize and identify the highly advertized item." (Doc. # 35-8 at 7). However, Dynamic Designs points out that "common sense

13

dictates that the use of rounded edges would be much safer to the installer than sharp or angular edges, such that competitors would be put at a competitive disadvantage if they were not allowed to use rounded edges." (Doc. # 37 at 4). Dynamic Designs also notes that "sharp edges on steel are hazardous to . . . the wiring that will necessarily be in close proximity to the speaker adapter's edges." (Doc. # 35 at 13).   In further support of its contention that the utilization of rounded edges on the Nalin speaker adapter is a functional characteristic that is not entitled to trade dress protection, Dynamic Designs also points to numerous speaker adapters featuring rounded corners. (Doc. # 35-9). As the proponent of trade dress protection for a non-registered product, Nalin bears the burden of demonstrating non-functionality. See Sharn, Inc. v. Wolfe Tory Med, Inc., No. 8:09-cv-706-T-33AEP, 2009 U.S. Dist. LEXIS 97385, at *6 (M.D. Fla. Sept. 30, 2009). Nalin has not done so with respect to the utilization of rounded corners.

The Court also reaches the conclusion that Nalin's choice to fabricate the speaker adapter from steel is functional.  In Mobile Shelter Systems, USA, Inc., the court rejected the proposition that steel fabrication is a non-functional characteristic noting: "It is a well-known and commonly

14

understood fact that steel is galvanized to resist corrosion. This method of protecting steel is cheap, effective, and so widely used in metal fabrication that it strains credulity to suggest that the galvanized steel frames of Plaintiff's products are anything but functional." 845 F. Supp. 2d at 1257. This Court similarly determines that utilization of steel, as opposed to plastic or wood, is a functional characteristic that affects the use, purpose, costs, and quality of the product. A steel product is resistant to cracking, warping, and corrosion and, as stated by Dynamic Designs, "Defendants do not get a monopoly on durable material." (Doc. # 35 at 14).

Here, Nalin has offered no competent evidence that these characteristics (three mounting holes, rounded corners, and steel fabrication) serve a source-identifying function, or that the sum of these parts combine to become source-identifying. See Mobile Shelter Sys., USA, Inc., 845 F. Supp. 2d at 1258. The Court determines that Nalin's speaker adapter lacks non-functional characteristics and is thus not entitled to trade dress protection. The Court grants the declaratory relief requested in count one of Dynamic Designs' Complaint and finds that "Plaintiff's design and sale of the car speaker adapters made specifically for Jeep Wranglers does not

infringe any valid trade dress owned by Defendants and that Defendants do not own the claimed trade dress." (Doc. # 1 at ¶ 53).

B.   **Tortious Interference**

The required elements of a claim for tortious interference with a contractual or business relationship under Florida law are: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)).[1]

Here, "Defendants do not dispute that they were aware of Plaintiff's relationship with eBay through the Autoware302 entity." (Doc. # 36 at 16).   The evidence supports Nalin's awareness of Dynamic Designs' relationship with eBay because

---

[1] "Tortious interference with a contract and tortious interference with a business relationship are basically the same cause of action.  The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." Cent. States, S.E. & S.W. v. Fla. Soc'y of Pathologists, 824 So. 2d 935, 940 (Fla. 5th DCA 2002).

16

Nalin contacted eBay and accused Dynamic Designs of offering a counterfeit product.  In addition, Nalin sent Dynamic Designs multiple items of correspondence with reference to Dynamic Designs' eBay sales, including a cease and desist letter directed to the Florida Handmade Creations account. (Doc. # 1-9).  Thus, the first and second elements of the tort -- Dynamic Designs' business relationship with eBay of which Nalin was aware -- have been satisfied.

However, there is a disputed issue of material fact regarding whether Nalin intentionally interfered with Dynamic Designs' relationship with eBay without justification.  As explained in <u>Austral Insulated Products</u>, "once the plaintiff establishes a prima facie case of interference, the burden shifts to the defendant to justify the propriety of its conduct." 262 F.3d at 1159.  Notably, "Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged." <u>Johnson Enters. v. FPL Group, Inc.</u>, 162 F.3d 1290, 1321 (11th Cir. 1998).

"Whether interference with a business relationship is privileged depends upon a balancing of the importance of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances

17

among which the methods and means used and the relation of the parties are important." <u>Austral Insulated Prods.</u>, 262 F.3d at 1159 (citing <u>Heavener, Ogier Servs., Inc. v. R.W. Fla. Region, Inc.</u>, 418 So. 2d 1074, 1076 (Fla. 5th DCA 1982)). <u>See also</u> <u>Manufac. Research Corp. v. Greenlee Tool Co.</u>, 693 F.2d 1037, 1040 (11th Cir. 1982)("Although businesses are accorded leeway in interfering with their competitors' business relationships, they must abide by certain rules of combat and not use improper means of competition.").

Here, Nalin corresponded with Dynamic Designs through eBay in September of 2011, and in such correspondence, Nalin indicated that Dynamic Designs was improperly selling an "exact replica" of Nalin's speaker adapter. (Doc. # 35-2). In addition, on November 11, 2011, Nalin submitted a VeRO complaint to eBay that Dynamic Designs was counterfeiting Nalin's product. (Doc. # 35-3). However, each of Nalin's communications with eBay concerning Dynamic Designs occurred prior to the USPTO's Notice of Abandonment issued on December 23, 2011, and the July 24, 2012, rejection of Nalin's copyright application. Thus, at the time of Nalin's correspondence to eBay, Nalin's intellectual property applications had not yet been rejected or otherwise adversely determined.

At this juncture, it is undisputed that Nalin has no trademark or copyright protection, and by issuance of the present Order, the Court finds that Nalin also lacks trade dress protections.  However, there is a genuine issue of material fact as to whether, in September and November of 2011, Nalin authored his communications to eBay about these rights in good faith.  "When there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question." <u>Austral Insulated Prods.</u>, 262 F.3d at 1159.

In assessing the evidence bearing on the intentional tort of tortious interference with a business relationship, the jury, rather than the Court, should decide whether Nalin's conduct falls within the competition privilege, or whether he employed an improper and tortious campaign against Dynamic Designs. Summary Judgment is therefore inappropriate.[2]  The

---

[2]The Court also notes that, even if it had not identified a jury issue with respect to whether Nalin's interference with Dynamic Designs' relationship with eBay was justified or privileged, summary judgment is also inappropriate because Dynamic Designs, the summary judgment proponent, has not provided any evidence in support of its contention that it suffered damages.  Completely absent from the record is any evidence bearing on sales lost due to Dynamic Designs' Autoware302 eBay account being suspended, or any other

19

Court accordingly denies Dynamic Designs' Motion for Summary Judgment as to Dynamic Designs' tortious interference with a business relationship claim asserted in count two of the Complaint.

### C. Florida Deceptive and Unfair Trade Practices Act

Last, Dynamic Designs contends that Nalin violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. ("FDUTPA").  FDUTPA makes it unlawful to engage in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "To state a claim under FDUTPA, a party must generally allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Fid. & Guar. Ins. Co. v. Ford Motor Co., No. 6:09-cv-595-Orl-31KRS, 2009 U.S. Dist. LEXIS 46848, at *6 (M.D. Fla. May 21, 2009).

A deceptive act is "an act that is likely to mislead consumers." Id.  An unfair practice is "a practice that offends established public policy and is otherwise 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Id. (citing Rollins, Inc. v. Butland, 951 So.

---

evidence upon which the Court could rely in rendering an award of damages.

2d 860, 869 (Fla. 2d DCA 2006)).  Pursuant to FDUTPA, "a consumer" includes individuals, businesses, corporations, or any commercial entities. Fla. Stat. § 501.203(7).  Likewise, "trade or commerce" is defined to include "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, or any good or service, or any property, rather tangible or intangible, or any other article, commodity, or thing of value." Fla. Stat. § 501.203(8).  In addition, the Florida Supreme Court has held that the statute "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract." PNR, Inc. v. Beacon Prop. Mgmt. Inc., 842 So. 2d 773, 777 (Fla. 2003).

Dynamic Designs' FDUTPA count, asserted in count three of the Complaint, alleges inter alia that "Defendants were aware that its product was not protected by any valid trade dress, design patent or copyright when it contacted eBay through its VeRO program, but did so intentionally to have Plaintiff's listing taken down and to harm Plaintiff's business." (Doc. # 1 at ¶ 61).

In support of the Motion for Summary Judgment, Dynamic Designs argues, "It is undisputed that Defendants contacted

Plaintiff's sales marketplace (eBay) and made false statements concerning intellectual property protection." (Doc. # 35 at 23). Nalin characterizes this argument as "incredible" and asserts: "Defendants are at a loss at how it could possibly be undisputed that Defendants made false statements to eBay. The evidence shows Defendants' statements to eBay simply alleged the Dynamic Designs' speaker adapter infringed Defendant's rights . . ." (Doc. # 36 at 18).

To a large extent, Dynamic Designs' FDUTPA claim is predicated on the same allegations as its tortious interference claim. In essence, in both counts, Dynamic Designs asserts that Nalin made intentionally false statements to eBay with reference to the speaker adapter with the purpose of harming Dynamic Designs. Dynamic Designs' tortious interference and FDUTPA claims are inextricably intertwined. Consistent with the Court's determination that summary judgment is not appropriate as to the tortious interference claim due to the presence of genuine issues of material fact, the Court likewise determines that Dynamic Designs is not entitled to summary judgment as to its FDUTPA claim.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Plaintiff Dynamic Designs Distribution, Inc.'s Motion for Summary Judgment (Doc. # 35) is **GRANTED** as to count one and **DENIED** as to counts two and three.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>18th</u> day of April, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record

23